UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUGLAS C.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**DECISION AND ORDER**

1:22-CV-00923 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Douglas C. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 10), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, the Commissioner's motion (Dkt. 10) is granted, and Plaintiff's motion (Dkt. 9) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on August 3, 2020. (Dkt. 8 at 19, 87-88).[1] In his applications, Plaintiff alleged disability beginning September 20, 2015, due to panic attacks, insomnia, memory problems, anxiety, and high blood pressure. (*Id.* at 19, 58, 73). Plaintiff's applications were initially denied on December 23, 2020. (*Id.* at 19, 125-34). A video hearing was held before administrative law judge ("ALJ") Bruce S. Fein on October 21, 2021. (*Id.* at 19, 33-56). On November 3, 2021, the ALJ issued an unfavorable decision. (*Id.* at 16-28). Plaintiff requested Appeals Council review; his request was denied on October 5, 2022, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I. The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2020. (Dkt. 8 at 21). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since September 20, 2015, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of generalized anxiety disorder, major depressive disorder, and panic disorder. (*Id.* at 21-22). The ALJ further found that Plaintiff's medically determinable impairments of hyperlipidemia, hypertension, vitamin D deficiency, history of cannabis and tobacco abuse, and asthma were non-severe. (*Id*. at 22).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*.). The ALJ particularly considered the criteria of Listings 12.04 and 12.06 in reaching his conclusion. (*Id.* at 22-23).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels with the additional limitations that Plaintiff:

> is limited to simple, routine, and repetitive tasks that entails occasional interaction with coworkers and supervisors, and no interaction with the public. He can work in a low stress job defined as only occasional decision making, change in work setting, and judgment required on the job.

(*Id.* at 23-24). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 27).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of sealing machine operator, labeler, and inspector packer. (*Id.* at 27-28). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 28).

## II. **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing: (1) the ALJ's determination that Plaintiff did not meet or equal Listing 12.04 or Listing 12.06 is not supported by substantial evidence; (2) the ALJ failed to consider the nature and context of Plaintiff's panic disorder in assessing his statements, activities, and the limiting effect of his conditions, and therefore the decision is not supported by substantial evidence; (3) the ALJ erred in basing the RFC on the opinions of the consultative examiner and state agency medical consultants; and (4) the RFC assigned by the ALJ is the result of errors of law. (Dkt. 9 at 11-20). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A. The Listings

Plaintiff's first argument is that the ALJ's determination that Plaintiff does not meet or equal Listing 12.04 (for depression, bipolar, and related disorders) or Listing 12.06 (for anxiety and obsessive-compulsive disorders) is not supported by substantial evidence.

(Dkt. 9 at 12-17). In response, the Commissioner contends that the ALJ's determination that Plaintiff did not satisfy the requirements of any listing is supported by substantial evidence, including because he carefully considered the four broad areas of mental functioning and supported his conclusions by relying on medical opinions in the record. (Dkt. 10-1 at 6-12).

Evaluation of the severity of mental impairments involves the application of a "special technique." The special technique requires the ALJ to evaluate a medically determinable mental impairment over four broad functional areas: understanding, remembering, or applying information; interacting with others; maintaining concentration, persistence, or pace; and adapting or managing oneself. *See* 20 CFR § 404.1520a(c). A claimant must show an "extreme" limitation in at least one of the four areas, or "marked" limitations in at least two of these areas, to meet Listing 12.04 or Listing 12.06.

Here, the ALJ found that Plaintiff had moderate limitations for each of the four areas of mental functioning. Specifically, the ALJ found that Plaintiff had moderate limitations for understanding, remembering, or applying information, including because Plaintiff acknowledged that he could follow spoken and written instructions; Todd Deneen, Psy.D., the consultative examiner, found that Plaintiff had no limitations for understanding, remembering, or applying simple directions or instructions, that Plaintiff's thought processes were coherent and goal-directed, and Plaintiff's intellectual functioning was average; and counseling records described Plaintiff's thought processes as logical, directed, and organized. (Dkt. 8 at 22-23). In terms of interacting with others, the ALJ found that Plaintiff had moderate limitations because Plaintiff indicated that he had no issues getting

along with others, got along well with authority figures, he had supportive family and friends, and also because counseling records described Plaintiff's attitude as cooperative. (*Id*. at 23). For concentration, persistence, or pace, the ALJ found that Plaintiff had moderate limitations because although Plaintiff represented that he had difficulty with concentration and finishing tasks, Dr. Deneen found that attention and concentration were only mildly impaired, with intact memory skills, and counseling records described Plaintiff's attention and concentration as normal. (*Id*.). Finally, in terms of adapting or managing himself, the ALJ found that Plaintiff had moderate limitations. (*Id*.). In reaching this conclusion, the ALJ noted that counseling records indicated that Plaintiff's impulse control, insight, and energy level were poor, whereas Dr. Deneen found that Plaintiff's insight was fair, and his judgment was good, and other evaluations showed that Plaintiff had fair insight, judgment, and impulse control. (*Id*.). Plaintiff also had never been psychiatrically hospitalized and he denied having suicidal ideations. (*Id*.).

For each category of mental functioning, the ALJ cited to specific evidence in the record supporting his findings that Plaintiff was moderately limited in each of these categories, including the opinion of Dr. Deneen, Plaintiff's own reports of his functioning, and treatment notes in the medical record. The ALJ explained that because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not met. (*Id*. at 23). The ALJ similarly concluded that Plaintiff did not satisfy the "paragraph C" criteria, because he did not require placement in a board and care facility, day treatment program, or other environment

providing a highly supportive living arrangement for persistent or uncontrolled psychiatric symptoms. (*Id*.).

In support of his argument that he satisfies the requirements of Listing 12.04 and Listing 12.06, Plaintiff identifies certain evidence he believes support a finding that he requires greater social limitations. (*See* Dkt. 9 at 12 (arguing that ALJ's conclusion that Plaintiff did not have issues getting along with others and was cooperative did "not accurately reflect his limitations"); *id*. at 14 (noting that Plaintiff stated he could not be around more than a few people, he no longer does social activities, he has anxiety and panic attacks, he finds it difficult to leave his home, and that he took counseling appointments by telephone)). Plaintiff also points to certain in-person appointments where he had a panic attack or needed a family member to accompany him. (*Id*. at 14-15; *see also* Dkt. 11 at 3-5).

The fact that there is some evidence in the record supporting greater limitations does not require reversal of the ALJ's finding that Plaintiff did not meet or medically equal one of the Listings. The ALJ is tasked with weighing conflicting evidence in the record, and "a court must afford the Commissioner's determination considerable deference and may not substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." *Weather v. Astrue*, 32 F. Supp. 3d 363, 368 (N.D.N.Y. 2012) (alteration omitted); *see also Schillo v. Kijakazi*, 31 F.4th 64, 78

(2d Cir. 2022) ("Under our very deferential standard of review . . . we cannot say that no reasonable factfinder could have reached the same conclusion. . . ." (citation omitted)).

While there may be some evidence in the record supporting that Plaintiff experienced difficulties leaving his home and with social anxiety, in the ALJ's assessment, the record as a whole demonstrated that Plaintiff had only moderate limitations in the four areas of mental functioning. For example, Plaintiff identifies a medical appointment on May 29, 2020, wherein he experienced a panic attack before attempting to attend the appointment. (Dkt. 8 at 354). Plaintiff attended the appointment after taking medication and was "a little shaky," but his examination was normal, he was alert, and he was not in acute distress. (*Id*. at 356). Likewise, notes from other in-person treatment visits demonstrate that Plaintiff exhibited normal mood and behavior, as well as fair or good judgment. (*See id*. at 320-23 (treatment note for November 16, 2020 office visit, documenting that Plaintiff felt a little shaky, but also that he "is not nervous/anxious," and also that Plaintiff was alert, with normal attention, speech, thought content, cognition, and judgment, and had cooperative behavior, and noting that Plaintiff was "doing well" on his current combination of medications); *id*. at 325-29 (treatment note for October 19, 2020 office visit, again documenting no nervousness or anxiousness, and a normal psychiatric examination); *id*. at 359-63 (treatment note for May 13, 2020 office visit, documenting that Plaintiff was alert, with normal mood, behavior, and thought content, and noting that Plaintiff had "markedly improved mentally" after increase in medication)).

Considering the evidence as a whole, the ALJ concluded that Plaintiff had only moderate limitations in the four areas of mental functioning, and there is evidence in the

record supporting this conclusion such that the Court cannot say that the ALJ's conclusion is not supported by substantial evidence. *See Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (discussing substantial evidence standard, which is a "very deferential standard of review" and means "once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*" (quotations and citation omitted)). Plaintiff has failed to demonstrate a lack of substantial evidence supporting the ALJ's decision, and therefore remand is not required on this basis.

**B. The Nature and Context of Plaintiff's Panic Disorder**

Plaintiff next contends that the ALJ erred by not considering the nature and context of his panic disorder, particularly regarding Plaintiff's ability to perform work activities on a consistent basis outside his home. (Dkt. 9 at 17-18).

Plaintiff testified at the administrative hearing regarding the symptoms of his panic disorder, including the effects of that disorder on his ability to leave his home or spend time with other people. (*See* Dkt. 8 at 42 (Plaintiff stating that, as a result of his panic attacks, he had "a very, very hard time leaving [his] house," he can no longer drive his vehicle or go to family events, and that he leaves his home only to go to doctor's appointments, before which he takes anti-anxiety medications); *id*. at 43 (Plaintiff's panic attacks are triggered by being around groups of more than two people); *id*. at 44 (Plaintiff can function in his home, including performing cooking and cleaning, so long as he has

breaks to accommodate the shaking in his legs); *id*. at 46 (Plaintif's testimony that he had panic attacks while on a golfing outing with a friend)).

In assessing Plaintiff's complaints regarding the symptoms caused by his panic disorder, the ALJ acknowledged Plaintiff's reports of anxiety when leaving his home or being around other people. (*See, e.g.*, Dkt. 8 at 24 (noting Plaintiff's testimony that he reported having difficulties being around large groups of people, and could no longer go for walks); *id*. at 25 (noting Plaintiff's testimony regarding social anxiety, as well as medical records documenting anxiety, shakiness, stuttering, poor sleep, avoidance of triggers, and low energy); *id*. (noting that at administrative hearing, Plaintiff endorsed frequent panic attacks in social settings); *id*. (noting Plaintiff's report that he feels nervous and shaky when he has to leave his home)).

However, the ALJ also explained that he did not credit Plaintiff's reports that he could not work as a result of the anxiety caused by leaving his home. For example, the ALJ noted that despite Plaintiff's reports of debilitating anxiety, the medical record demonstrated that Plaintiff had not required more intensive treatment than routine counseling, such as frequent emergency room visits or psychiatric hospitalization. (*Id*. at 25). Similarly, on September 8, 2021, Plaintiff advised that he was no longer seeing a therapist. (*Id*.).

In addition, the ALJ explained that mental status examinations in the record did not support the degree of mental restrictions endorsed by Plaintiff. (*Id*.). For instance, although Plaintiff reported in April 2016 that he felt nervous and shaky when he had to leave his home for an appointment, his psychiatric examination was normal. (*Id*.; *see also*

*id*. at 383 (noting that Plaintiff presented in office for follow-up appointment, that he reported being nervous and shaky and presented as nervous and anxious, but he had a normal psychiatric exam, including he was oriented to person, place, and time, was alert, and had a normal mood and affect)). The ALJ also explained that "[e]ven during a period where the claimant was actively experiencing a panic attack, he nevertheless was cooperative with no suicidal/homicidal ideation, normal coordination, and normal judgment." (*Id*. at 25). The ALJ cited to other instances wherein Plaintiff reported experiencing anxiety, but retained normal mental functioning. (*See id*. at 26 ("Progress notes from November 2020 indicated that while the claimant appeared anxious, his attention was normal, mood was not depressed or elated, affect was not labile, blunt, flat, angry, tearful, or inappropriate, speech was normal, behavior was normal, behavior was cooperative, thought content was normal, no suicidal or homicidal ideations were present, cognition was normal, and judgment was normal."); *id*. ("In April 2021, counseling records indicated that the claimant's mood was anxious, but his affect was appropriate, thought process was normal and intact, thought content was appropriate to conversation, memory was normal, hallucinations were normal, attention was normal, concentration was normal, judgment was good, insight was good, impulse control was good, interpersonal was cooperative, motor activity was normal, speech was good, and energy level was good."); *id*. ("In July 2021, the claimant's mood was anxious and speech was rapid and pressured; however, his behavior was normal and cooperative, thought content was normal, and no suicidal/homicidal ideations were present.")). In other words, although Plaintiff reported

feeling nervous and anxious when leaving the house, the evidence before the Court also demonstrated that Plaintiff retained some ability to function from a mental standpoint.

Finally, despite that Plaintiff retained some degree of mental functioning even when feeling anxious or nervous, the ALJ noted that the RFC included limitations for Plaintiff's social anxiety (including greater limitations than those assessed by some of the medical opinions), including that Plaintiff is limited to a low-stress job with no interaction with the general public, and only occasional interaction with co-workers and supervisors. (*Id*. at 25 ("Accounting for the claimant's testimony of social anxiety, as well as medical records documenting high anxiety, shakiness, stuttering, poor sleep, avoidance of triggers, and low energy . . . I have found greater restrictions for social interaction than Dr. Deneen, Dr. Kamin, and Dr. Juriga identified." (citations omitted)).

Plaintiff points to certain evidence in the record supporting that he cannot work due to his panic disorder, comprised mostly of his own reports of his functioning. (*See* Dkt. 9 at 17). There are two problems with Plaintiff's argument. First, the ALJ is not required to grant disability benefits based on Plaintiff's subjective complaints alone. *See Conetta v. Berryhill*, 365 F. Supp. 3d 383, 406 (S.D.N.Y. 2019) ("case law holds that an ALJ is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record" (quotations and citations omitted)). And that is precisely what the ALJ did in this case—as explained above, the ALJ acknowledged Plaintiff's reports of anxiety leaving his home, but also weighed other evidence in the record (such as normal mental status examinations and other treatment records) contradicting Plaintiff's own

reports of his symptoms. It is the ALJ's duty to resolve conflicts among evidence in the record, *see Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012) (explaining that "because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent"); *see also Smith v. Berryhill*, 740 F. App'x 721, 725 (2d Cir. 2018) ("The ALJ could have reached a different conclusion on the disputed medical record, but we defer to the ALJ's disability determination when it is supported by substantial evidence."), and therefore it was entirely proper for the ALJ to consider all the evidence in the record and assess an RFC supported by the record as a whole, rather than just Plaintiff's reports of his mental functioning. Accordingly, remand is not required on this basis.

**C. Opinions by Consultative Examiner and State Agency Medical Consultants**

Plaintiff further argues that the ALJ erred because he based the RFC on the opinions of Dr. Deneen, the consultative examiner, and the state agency medical consultants, E. Kamin, Ph.D., and M. Juriga, Ph.D. (Dkt. 9 at 18). Plaintiff's sole argument as to why the ALJ's reliance on these opinions was improper is because none of these doctors conducted an in-person examination of Plaintiff. (*Id*. ("None of these doctors examined Plaintiff in

person or reviewed his full medical records, undermining the reliability of their opinions significantly.")).[2] [3]

As an initial matter, "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." *Bump v. Comm'r of Soc. Sec.*, No. 5:15-CV-1077 (GTS), 2016 WL 6311872, at *4 (N.D.N.Y. Oct. 28, 2016). Accordingly, Plaintiff's blanket assertion that it was error for the ALJ to rely on the opinions of non-examining medical consultants is not supported by the law.

Further, the Court has reviewed the ALJ's assessment of the opinions offered by Dr. Deneen, Dr. Kamin, and Dr. Juriga, and finds that his assessment of these opinions was proper. Dr. Deneen conducted a psychiatric evaluation of Plaintiff by Zoom for Healthcare on September 8, 2021. (Dkt. 8 at 781). Dr. Deneen noted that Plaintiff lived in a house, where his children sometimes visited, and no longer saw a therapist. (*Id.*). Because he was previously involved in motor vehicle accidents, Plaintiff was nervous driving. (*Id.* at 782). Dr. Deneen noted that Plaintiff's demeanor was cooperative, and his social skills were adequate. (*Id.*). Plaintiff's mental status examination was normal, other than that his

---

[2] Although Dr. Deneen's examination was virtual rather than in person, Dr. Deneen did conduct an examination of Plaintiff, including by reviewing his medical history and conducting a mental status examination of Plaintiff. (Dkt. 8 at 781-83).

[3] Plaintiff argues that Drs. Deneen, Kamie, and Juriga did not have the benefit of reviewing his full medical record. However, Plaintiff does not expound upon how a review of the full medical record would have changed the opinions offered by these doctors, nor does he identify any specific records that would have changed these doctors' assessments of Plaintiff's work-related functional limitations.

attention and concentration were mildly impaired due to anxiety in the evaluation setting. (*Id*. at 782-83). Dr. Deneen found that Plaintiff:

> [W]ill have no limitations with the following: Understand, remember, or apply simple directions or instructions, understand, remember, and apply complex directions and instructions, use reason and judgment to make work-related decisions, interact adequately with supervisors, co-workers, and the public, maintain personal hygiene and appropriate attire, and awareness of normal hazards and take appropriate precautions. He will have a mild limitation with the following: Sustain concentration and perform a task at a consistent pace and sustain an ordinary routine and regular attendance at work. He will have a moderate limitation with the following: Regulate emotions, control behavior, and maintain well-being. The claimant's difficulties are caused by his lack of motivation and mood symptoms.

(*Id*. at 783-84). Similarly, Dr. Kamin found that Plaintiff had mild limitation for understanding, remembering, and applying information, and moderate limitations for interacting with others, concentrating, persisting, or maintaining pace, and adapting and managing himself. (*Id*. at 62). Dr. Juriga found that Plaintiff would have moderate limitations in each of the four areas of mental functioning. (*Id*. at 96).

In the written determination, the ALJ explained that he found these opinions supported Plaintiff's ability to perform simple work in a low-stress environment, and with limited social interaction. He also noted that the opinions were supported by mental status examinations in the record, citing to specific medical records supporting this assessment. (*Id*. at 25). However, the ALJ also noted that he included greater limitations than those assessed with respect to Plaintiff's abilities for social interaction—for example, Dr. Deneen assessed that Plaintiff would have no limitations for interacting adequately with supervisors, co-workers, and the public, and the ALJ explained that he included greater restrictions for social interaction based on Plaintiff's "testimony of social anxiety, as well

as medical records documenting high anxiety, shakiness, stuttering, poor sleep, avoidance of triggers, and low energy." (*Id.*).

As explained above, Plaintiff's argument that the ALJ erred by crediting these opinions because they were not based on in-person examinations, standing alone, is not persuasive. Plaintiff fails to point to any errors in the ALJ's assessment of the opinions offered by these doctors, such as that the ALJ improperly weighed the medical evidence. Further, Plaintiff does not point to any other medical opinions in the record either contradicting the opinions offered by Dr. Deneen, Dr. Kamin, or Dr. Juriga, or any medical opinions assessing greater functional limitations. Finally, contrary to Plaintiff's suggestion, the ALJ plainly accounted for the fact that Plaintiff had greater limitations for social interaction than those assessed by these doctors, who did not perform in-person examinations, because he specifically noted that he assessed greater limitations based on Plaintiff's reports of social anxiety. Accordingly, for those reasons, remand is not required on this basis.

**D. The RFC and Errors of Law**

Plaintiff's final argument is that due to the ALJ's errors of law, the RFC is not supported by substantial evidence, including because the limitations included in the RFC are "minimal." (Dkt. 9 at 19). Plaintiff states that the record demonstrates far greater limitations, but other than citing to Plaintiff's purported inability to leave his home, he fails

to meaningfully discuss any medical evidence supporting greater limitations, nor does he identify any specific limitations he believes should be included in the RFC.

For the reasons explained above, the Court finds that the ALJ did not commit prejudicial error requiring remand for further proceedings, and his assessment of the RFC was proper and supported by substantial evidence. It is clear to the Court that the ALJ considered Plaintiff's reports of anxiety upon leaving his home, but ultimately determined based on other evidence in the record that Plaintiff was capable of performing the work outlined in the RFC. Further, the RFC—which requires that Plaintiff perform simple work with very limited interaction with others—is consistent with Plaintiff's moderate mental limitations, as assessed by the various medical opinions in the record. *See, e.g., Hintsa N. v. Comm'r of Soc. Sec.*, 20-CV-6335-FPG, 2021 WL 3615704, at *2 (W.D.N.Y. Aug. 16, 2021) ("The ALJ properly accounted for Plaintiff's moderate limitations in sustaining concentration and performing tasks at [a] consistent pace, by limiting Plaintiff to simple, routine, repetitive tasks. Courts in this District routinely conclude that an ALJ's directive that plaintiff is limited to performing simple, routine tasks accommodates a medical professional's finding that plaintiff is moderately limited in concentration, persistence, and pace." (quotations, citations, and alteration omitted)); *see also Athena W. v. Comm'r of Soc. Sec.*, No. 20-CV-01831-MJR, 2023 WL 2262790, at *5 (W.D.N.Y. Feb. 27, 2023) ("multiple courts have held that . . . marked limitations in social interaction can be satisfied by limiting the individual to no more than occasional interaction with others"). Accordingly, remand is not required based on any purported errors of law.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 16, 2024
Rochester, New York